## BACA *v.* FULTON.

Filed January 22, 1885.

ACCORD AND SATISFACTION—RECEIPT—TWO INNOCENT PARTIES.
Plaintiff assigned an account against defendant to a third party, and executed a receipt therefor, in consideration of a diamond pin, and a sum of money. Upon the discovery that the diamond was worthless, he tacitly acquiesced in the proposal of the third person to furnish another. *Held,* that he cannot afterwards rescind the contract and recover the amount from defendant, who has meanwhile innocently paid it to the third party on faith of the receipt.

Appeal from Second district, Bernalillo county.
*Fiske & Warren* and *A. J. Barr,* for appellant.
*Stone & Stone,* for appellee.
WILSON, J. The plaintiff below commenced this suit against Kate Fulton, defendant below, by attachment; the amount alleged to be due in the plaintiff's affidavit being $336. Judgment by default was rendered against the defendant. The defendant came into court and filed an affidavit of merits, and asked the court to set aside the judgment, which upon hearing was granted, and, by leave of the court,

the defendant put in a plea of *nil debet* and *actio non*. At a subsequent term of the court the case came on for trial. The parties waived a jury. The court, upon hearing, rendered judgment in favor of the plaintiff for the amount of his claim, whereupon the defendant moved the court for a new trial for the reasons following: (1) The judgment of the court rendered herein is contrary to the law and the evidence; (2) that the said judgment is without authority of law, and without evidence to support the said judgment; (3) for newly-discovered evidence. Motion for new trial was refused by the court, whereupon the defendant appealed, and assigned the same reasons as specifications of error. The amount claimed in plaintiff's declaration was not denied by the defendant; but, as a defense, the receipt of the plaintiff, in full, for the very account claimed on was given in evidence on the trial by the defendant. The plaintiff did not deny the genuineness of the receipt, but insisted that it ought not to be allowed as a defense, for the reason that it was obtained for a diamond pin which proved to be defective; and on the trial the plaintiff was called as a witness, and testified as follows:

"Captain Gray bought into my business as a partner, and when we were looking over our accounts he saw this account against Kate Fulton, and he said, 'I will give you this diamond pin and a hundred dollars for that account.' He had a diamond pin and he showed it to me. I said, 'All right; I will ask Mr. Sharrick and Bayse the value of the pin, and if it was good I would take it; I was not a judge of diamonds.' I took the pin and gave him a receipt for the account.

"*By the Court.* How much was the diamond pin put in at?

"I had to give him a hundred dollars in addition to the account."

He further testified that the next day he took the pin and showed it to Mr. Bayse, and Bayse said it was worth about a hundred and fifty dollars. He said it was not clear diamond; it was full of flaws. He then showed it to Sharrick, and he told him the same thing. And then he says he brought it to Capt. Gray, and told him, "I would not take it." He took the diamond and said Mr. Favor had ordered two diamonds, worth $500 each, and when they came, "I will give you one, and you can give me two hundred dollars." When they came he took one, but did not give me the other."

The defendant called C. D. Favor as a witness, and he testified, among other things, as follows:

"In January, 1883, or first of February, Mr. Baca was trying to buy a diamond stud of me. Finally, he wanted to pay me part cash, and part in an account against Kate Fulton. He offered me $150 and the account, on Sunday. On Monday I called on her to see how much I could get for the account. On Tuesday I called on Baca, and he gave me two hundred dollars in money, and told Reynolds to receipt Kate Fulton's account, and give it to me. I told him he had commenced suit; and he said, 'Yes; but I will dismiss the suit.' Then she gave me her note, and paid it in sixty days." "You had a transaction with her?" "Yes, sir." "You settled in full, and Baca receipted the bill?" "He told Mr. Reynolds to receipt the account and give it to me. This is the receipt. Mr. Baca agreed to dismiss his case and pay his own costs."

The plaintiff was recalled, and testified in his own behalf:

"I never had any transaction with Favor. I have with Mr. Gray. Mr. Gray sold me the diamond I referred to. My transaction was with Mr. Gray, and not with Mr. Favor. * * * I gave this account to Mr. Gray, and $100; but I returned the diamond. Then I had paid him $436. Then Mr. Gray presented the diamond to his son, and agreed to get me another diamond from Favor, who, he said, had ordered two, and when they arrived I could take one instead."

These quotations show substantially the whole strength of plaintiff's case. Baca's own testimony proves that he gave or authorized a receipt to be given; that he received the diamond pin, which was the consideration for the receipt. While he does not testify to any express agreement that he was allowed the privilege to rescind the contract if the diamond was not "good," yet a jury would, perhaps, be warranted to draw that inference. But his own testimony shows clearly that he never has claimed or asked a rescission of the agreement. On the contrary, he says that when he delivered the pin to Gray, Gray agreed to get another diamond from Favor, who he said had ordered two, and when they arrived I could take one instead. This is most evidently no rescission of the original contract, but a compromise in affirmance of it. It is proved, and not contradicted, that Kate Fulton, the defendant below, gave Favor her note for this same claim and paid it, according to its tenor, in 60 days after its date; and this latter statement is corroborated by the fact that when the trial was reached she produced the receipt in her defense.

The first error assigned is "that the judgment of the court herein is contrary to the law and the evidence." Upon a careful examination of the evidence we cannot avoid the conclusion that the weight of evidence is with the defendant below. It follows that if the judgment is against the evidence it is likewise against law; but, to apply a familiar principle of law to this case, that if one of two innocent persons must suffer a loss, the one that occasioned it must bear it, there is no evidence in the case from which an inference can be legally drawn that the defendant below acted in collusion with either Favor or Gray to defraud Baca; but if she was induced to part with her money on the faith of that receipt, she ought not to be compelled to pay it again.

The first assignment of error is sustained, and the judgment of the court below is reversed and a new trial ordered.

AXTELL, C. J., concurs.